IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MELISSA WILSON, et al.            )
                                  )
v.                                )    NO. 3-14-1492
                                  )    JUDGE CAMPBELL
                                  )
DARIN GORDON, et al.              )

PRELIMINARY INJUNCTION ORDER

Pending before the Court are Plaintiffs' Motion for Preliminary Injunction (Docket Nos. 4, 5), the Defendants' Response (Docket No. 59) in opposition, and the Plaintiffs' Reply (Docket No. 79). The Court held a hearing on Plaintiffs' Motion on August 29, 2014.

The eleven named Plaintiffs have brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against Defendant Darin Gordon, the Deputy Commissioner of the Tennessee Department of Finance and Administration ("DFA") and Director of the Division of Health Care Finance and Administration; Defendant Larry B. Martin, the Commissioner of DFA; and Defendant Dr. Raquel Hatter, the Commissioner of the Tennessee Department of Human Services, for alleged violations of federal law, as well as the Fourteenth Amendment Due Process Clause, in connection with the State of Tennessee's Medicaid Program, TennCare. (Docket No. 1). More specifically, the Plaintiffs allege that the Defendants have unreasonably delayed adjudications of their applications for medical assistance through TennCare, and have failed to provide fair hearings on the delayed adjudications. (Id.)

The Motion For Preliminary Injunction (Docket No. 4) requests that the Court enjoin the Defendants from (1) continuing to defy their obligation under federal law to provide an adjudication of TennCare claims with "reasonable promptness," pursuant to 42 U.S.C. §

1396a(a)(8); and (2) refusing to provide fair hearings on the delayed adjudications, as required by 42 U.S.C. § 1396a(a)(3). The Plaintiffs' proposed relief includes detailed procedures for implementing the prompt adjudication and fair hearing requirements. (Docket No. 4-2).

States that provide medical assistance for their citizens under the Medicaid program are required by law to furnish such assistance "with reasonable promptness to all eligible individuals," and to grant "an opportunity for a fair hearing" when claims are not acted upon "with reasonable promptness." 42 U.S.C. §§ 1396a(a)(3), (8). The regulations implementing this statutory law require that the State make the determination of eligibility within 90 days for applicants who apply for Medicaid on the basis of disability, and within 45 days for all other applicants. 42 C.F.R. § 435.912(c)(3).

The Due Process Clause of the Fourteenth Amendment requires that the State provide applicants for Medicaid with due process protections when it fails to process a claim for Medicaid assistance reasonably promptly. *See Goldberg v. Kelly*, 397 U.S. 254 (1970); *Ability Center of Greater Toledo v. Lumpkin,* 808 F.Supp.2d 1003, 1019-15 (N.D. Ohio 2011).

The Plaintiffs' Declarations indicate that the Defendants have failed to comply with these requirements. For example, the Declaration of Plaintiff Melissa Wilson indicates that she applied for medical assistance on February 10, 2014, and as of the time of the Declaration, had not received any response on her application. (Docket No. 1-8). When she requested a hearing from the State's call center, she was told that they do not do those hearings. (Id.) The Declaration of Plaintiff April Reynolds indicates that she applied for medical assistance on or about February 19, 2014, and resubmitted her application in June, 2014. (Docket No. 1-6). When she requested a hearing from the call center, she was told there was no way she could appeal without a determination of her eligibility. (Id.) The other Plaintiffs have had similar experiences. (Docket

2

Nos. 1-1 through 1-8). As part of their Reply, the Plaintiffs have also submitted the Declarations of other individuals whose applications were pending for a period of five to nine months. (Docket Nos. 66-69, 71-73).

Since the Complaint was filed, the eleven named Plaintiffs have been enrolled in TennCare. (Plaintiffs' Reply, at 5 n. 3 (Docket No. 79)). Through a contemporaneous Order, however, the Court has certified a class of "all individuals who have applied for Medicaid (TennCare) on or after October 1, 2013, who have not received a final eligibility determination in 45 days (or in the case of disability applicants, 90 days), and who have not been given the opportunity for a 'fair hearing' by the State Defendants after these time periods have run."

The Defendants contend that Plaintiffs are not entitled to relief because: (1) Plaintiffs lack standing; (2) any delay in processing applications is attributable to the Federal Government; (3) Plaintiffs' claims are not actionable under Section 1983; (4) the Defendants have not violated the statutes or regulations cited by Plaintiffs; (5) the Plaintiffs have failed to join the Federal Government as a required party under Rule 19 of the Federal Rules of Civil Procedure; (6) the Plaintiffs cannot demonstrate irreparable harm; and (7) the requested injunctive relief would impose a substantial burden on the State.

The Defendants essentially blame any delayed adjudications of Plaintiffs' TennCare applications on the "federally facilitated exchange." The federally facilitated exchange ("Federal Exchange") was established to implement the goals of the Patient Protection and Affordable Care Act ("ACA"), enacted in 2010, to "increase the number of Americans covered by health insurance and decrease the cost of health care." *Nat'l Fed. Of Ind. Bus. v. Sebelius,* 132 S.Ct. 2566, 2580 (2012); *King v. Burwell*, ___ F.3d ___, 2014 WL 3582800 (4th Cir. July 22, 2014). In an effort to simplify and streamline the method for calculating income eligibility for Medicaid

3

recipients, the ACA also required that states participating in the Medicaid program use a new formula for calculating income known as the "Modified Adjusted Gross Income," or MAGI, calculation. 42 U.S.C. § 1396a(e)(14); 42 U.S.C. § 1397bb(b)(1)(v). When the Defendants determined that the computer program the State planned to use for implementing this new calculation ("TEDS") would not be operational by October 1, 2013, as required, they requested and received permission from the Federal Government to have the Federal Exchange process TennCare applications on an interim basis. (Docket No. 4-1, at p. 92 of 125, and p. 101-102 of 125)). The State indicated, at that time, that its new system would be operational by January, 2014. (*Id.*)

In his Declaration filed on August 14, 2014, however, Defendant Gordon states that: "The State is not currently formally forecasting a date when TEDS will be fully operational. . ." (Docket No. 52, at ¶ 6). In an appearance before the Joint Fiscal Review Committee of the Tennessee General Assembly on August 26, 2014, Defendant Gordon stated that he expected an audit of the progress of TEDS sometime in December, 2014, and that he had the "slightest bit" of confidence that the TEDS contractor will be able to produce a product that meets State standards. (Docket No. 84-2).

In determining whether to issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) whether the movant has shown a strong or substantial likelihood of success on the merits; (2) whether irreparable harm will result without an injunction; (3) whether issuance of a preliminary injunction will result in substantial harm to others; and (4) whether the public interest is advanced by the injunction. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). The Court finds these requirements have been met in this case.

4

For the reasons set forth herein, the Court concludes that the Plaintiffs have shown a substantial likelihood of success on the merits. The Defendants' arguments to the contrary are without merit.

The Defendants argue that the Plaintiffs lack standing because their injuries were not *caused* by the Defendants, and the Defendants are unable to *redress* them. The Defendants essentially blame any delayed adjudications of Plaintiffs' TennCare applications on the "Federal Exchange."

The Court is not persuaded, however, that the State can delegate its responsibilities under the Medicaid program to some other entity – whether that entity is a private party or the Federal Government. If a state decides to participate in the Medicaid program, it is required to ensure that applications are adjudicated reasonably promptly and that hearings on delayed adjudications are held reasonably promptly. 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10(c)(3), (e); 42 C.F.R. § 435.1200(b)(3)(iii), (c)(ii); *McCartney ex rel. McCartney v. Cansler*, 608 F. Supp. 2d 694, 701 (E.D.N.C. 2009), *aff'd sub nom. D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x 334 (4th Cir. 2010)(State "may not disclaim its responsibilities under federal law by simply contracting away its duties.") Despite the State's argument to the contrary, this principle is longstanding and was not altered by the Affordable Care Act. *See* 42 U.S.C. § 18118.

In that regard, the United States has filed a Statement Of Interest (Docket No. 85) stating: "Under the Medicaid statute, 42 U.S.C. § 1396a *et seq.,* it is the state Medicaid agency, in this case TennCare, that at all times retains the ultimate responsibility to ensure that a reasonably prompt decision is made on applications, including ones that have been submitted in the first instance to the federally facilitated Exchange in the State." *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984);

*Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)(Agency interpretation entitled to deference).

The Court is also unpersuaded by Defendants' argument that the Plaintiffs' claims are not actionable under Section 1983 because the statutory and regulatory provisions they cite are not "sufficiently specific." Unlike the cases cited by Defendants, the regulatory provisions applicable here set forth specific time frames that are fully supported by the statutory provisions they implement. 42 U.S.C. §§ 1396a(a)(3), (8) (State must provide opportunity for "a fair hearing" to individual whose claim is not acted upon "with reasonable promptness;" medical assistance shall be provided "with reasonable promptness" to all eligible individuals); 42 C.F.R. § 435.912(c)(3) (State must make the determination of eligibility within 90 days for applicants who apply for Medicaid on the basis of disability, and within 45 days for all other applicants). *See, e.g., Harris v. Olszewski,* 442 F.3d 456, 460-66 (6th Cir. 2006); *Ability Center of Greater Toledo v. Lumpkin,* 808 F.Supp.2d 1003, 1019-15 (N.D. Ohio 2011). *See also Romano v. Greenstein,* 721 F.3d 373, 377 (5th Cir. 2013); *Doe v. Kidd*, 501 F.3d 348, 355-57 (4th Cir. 2007).

The Court is also unpersuaded by Defendants' argument that the regulatory requirements do not apply to the Plaintiffs. Defendants contend that the existence of "unusual circumstances," under 42 C.F.R. § 435.912(e), excuses their failure to provide a fair hearing to TennCare applicants with "reasonable promptness." As of the date of this Order, ten months have elapsed since the State began directing TennCare applicants to the Federal Exchange, and the Defendants are not "currently formally forecasting a date" when their system for processing applications will be operational. Applying the term "unusual" to such a situation would extend the term beyond its intended meaning. The Federal Exchange was not designed to replace the State's Medicaid

application process, and it is not particularly surprising that the system has had operational problems and difficulties in handling that task.

To the extent the Defendants suggest in their briefs that they are *unable* to obtain information on applicants who have applied with the Federal Exchange, and therefore, cannot hold a hearing, that suggestion is undermined by their submission of the Declaration of Kim Hagan (Docket No. 53). Ms. Hagan's description of how the State was able to act on the applications of several of the Plaintiffs and other individuals whose names were brought to the attention of the State indicates that there is no legal or factual barrier preventing the State from obtaining information about particular individuals from the Federal Exchange. For this reason, and because the State cannot delegate its responsibility to hold hearings (and obtain the necessary information to do so), the Court is not persuaded by the Defendants' arguments that the Federal Government is a required party under Rule 19, or that it is the responsibility of the Federal Government to hold hearings.

As for the remaining preliminary injunction requirements, based on the Declarations of the Plaintiffs and other individuals that have been filed in this case, it is clear that irreparable harm has occurred and will continue to occur without the issuance of injunctive relief. The Plaintiff class members are economically impoverished and, without TennCare benefits, have foregone or are foregoing vital medical treatments, services, and prescriptions. These injuries cannot be made whole by a retroactive award of money after the litigation process is complete.

Although the Defendants have recently taken steps to ensure that the applications of the named Plaintiffs have been processed, the Court has certified a class in this case, and members of the class, by definition, have applications that have been pending beyond the timeframe set forth in the applicable statutes and regulations for holding a fair hearing. Furthermore, as

discussed in the Class Certification Order, the claims of the Plaintiffs and the putative class are "inherently transitory." Thus, Defendants' mootness argument is without merit.

The irreparable harm suffered by the Plaintiff Class outweighs any burden imposed on the State through injunctive relief, especially given that the injunctive relief fashioned by the Court simply requires the State to comply with the obligations imposed upon it by law as a participant in the Medicaid program. The Defendants indicate that if relief is granted, they fear a backlog of unadjudicated claims. But their fear has already been realized in the form of the Plaintiff Class. The relief granted by the Court is designed to eliminate the backlog, not create one, and is narrowly tailored to achieve that aim. For these same reasons, the Court also finds that injunctive relief is in the public interest.

Accordingly, the Court GRANTS the Motion For Preliminary Injunction (Docket No. 4) as follows:

The Defendants are enjoined from continuing to refuse to provide "fair hearings" on delayed adjudications, as required by 42 U.S.C. §§ 1396a(a)(3), (8) and 42 C.F.R. § 435.912(c)(3). More specifically, based on these provisions, and the Fourteenth Amendment Due Process Clause, the Defendants are ordered to provide the Plaintiff Class[1] with an opportunity for a fair hearing on any delayed adjudication. Any fair hearing shall be held within 45 days after the Class Member requests a hearing and provides the Defendants with proof that an application

---

[1] The Plaintiff Class is defined by contemporaneous Order as follows: "All individuals who have applied for Medicaid (TennCare) on or after October 1, 2013, who have not received a final eligibility determination in 45 days (or in the case of disability applicants, 90 days), and who have not been given the opportunity for a 'fair hearing' by the State Defendants after these time periods have run."

for medical assistance was filed (or the hearing shall be held within 90 days after that date, if the application was based on disability).

"Delayed adjudication," for purposes of this injunction, means an adjudication that has not occurred within 90 days after the filing of an application for Medicaid on the basis of disability, and within 45 days after the filing of all other Medicaid applications.

Given the financial condition of the Plaintiffs, the Court concludes that they are not required to post a bond.

This preliminary injunction is effective upon its issuance on September 2, 2014, at 3:00 p.m. The injunction expires at the conclusion of the trial on the merits or pending further order of the Court.

It is so ORDERED.

                                               *Todd Campbell*
                                               TODD J. CAMPBELL
                                               UNITED STATES DISTRICT JUDGE