IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| MELISSA WILSON, et al., individually and on behalf of all others similarly situated,<br><br>　　Plaintiffs,<br><br>v.<br><br>WENDY LONG, et al.,<br><br>　　Defendants. | Civil Action No. 3:14-CV-01492<br><br>Judge Collier<br>Magistrate Judge Newbern |

**PLAINTIFFS' POST-HEARING BRIEF**

**IN OPPOSITION TO**

**DEFENDANTS' MOTION TO DECERTIFY THE CLASS AND
DISMISS THE CASE
(DOC NO. 164)**

Pursuant to the Court's April 28, 2017 Order (Doc. No. 210), Plaintiffs submit this supplemental brief in opposition to Defendants' Motion to Decertify the Class and Dismiss the Case (Doc No. 164), and also incorporate herein their original opposition brief (Doc. No. 171), as well as their original and reply briefs on class certification (Doc Nos. 3, 62).

As argued below, the Class continues to satisfy numerosity because the definition creates an inherently transitory class that gains members as TennCare fails to ensure their application is timely processed within the required 45 or 90 days, and loses members as they *either* receive a decision on their delayed application *or* complete the hearing process. Typicality is also satisfied since the interests of the class and named plaintiffs remain aligned.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs adopt the procedural history and factual background provided in their original opposition brief, *see* Pls.' Opp. Br. 3–5 (Doc No. 171), and add three points here:

**1. Filing of Suit and Entry of Orders.** Plaintiffs filed suit in July 2014, alleging the State's Medicaid program, "TennCare," was not timely processing applications as required by 42 U.S.C. § 1396a(a)(8), and was not providing a hearing to those who were delayed as required by § 1396a(a)(3) and the Due Process Clause. The Court certified a class defined as

> All individuals who have applied for Medicaid (TennCare) on or after October 1, 2013, who have not received a final eligibility determination in 45 days (or in the case of disability applicants, 90 days), and who have not been given an opportunity for a "fair hearing" by the State Defendants after these time periods have run.

Class Cert Order 8 (Doc No. 90). The Court also entered a preliminary injunction compelling the State to provide an "opportunity for a fair hearing" within 45 days (or 90 days if eligibility were based on a disability) to those who were delayed. Prelim. Inj. Order 8–9 (Doc. No. 91).[1]

---

[1] This relief is similar but not identical to Medicaid regulations requiring states to provide a fair hearing process, have a way to expedite those hearings, and take final administrative

1

**2. Cause of Delays and Scope of Class and Relief.** These delays were caused by TennCare's failure to process any Medicaid applications after the Affordable Care Act ("ACA") went into effect, which changed some, but not all, Medicaid eligibility criteria.[2] The State was supposed to be ready by late 2013, but as of today the State *still* claims to have no ability to process all applications itself.[3] They instead referred nearly all applicants to the Federal Exchange to apply for TennCare, despite the Federal Exchange not fully screening for all Medicaid eligibility categories; this "short-term measure" is continuing today.[4]

TennCare's inability to timely process applications was not isolated to those forced to traverse the Federal Exchange. TennCare continued processing two other categories of applications, yet these also experienced delays.[5] Accordingly, the Court's class definition and injunctive relief are not contingent on the underlying facts of the application process, but focus instead on the right of every applicant to receive a reasonably prompt determination.

**3. Injunctive Relief is Continuing to Help Applicants.** TennCare makes no effort to track the number of applications delayed beyond the required 45 or 90 days, so it is impossible to know precisely how many applicants continue to face delays. However, TennCare does generate a report showing the status of delay appeals granted pursuant to the

---

action within 90 days of a hearing being requested. 42 C.F.R. §§ 431.224(a), .244(f)(1).

[2] *See Wilson v. Gordon*, 822 F.3d 934, 939 (6th Cir. 2016) (describing rule changes).

[3] *See* Tenn. Strategy for Oct. 1, 2013 Mitigation Plan ¶ 1 (Doc No. 4-1, PageID# 274; Hagan Depo Tr 107:25–108:1, 109:17–20 (attached to Brooke Decl. as Ex. 1).

[4] Prelim. Inj. Order 6–7 ("The Federal Exchange was not designed to replace the State's Medicaid application process . . . ."); Ltr. from Mann to Gordon at 3) (Doc. No. 4-1, Page ID # 298) ("short-term measure"). Indeed, certain categories of eligibility, like that for medically needy individuals, are not calculated by the FFM but referred back to the state. *See* Declaration of Wendy Long 3 n.2 (Doc. No. 54).

[5] *See, e.g.*, Declarations of Carlene LeCompte (Doc No. 66, delay in applying for CHOICES); Derrick Simpson (Doc No. 67, same); M.A.B. (Doc No. 70-2, delay in applying for Medicare Savings Program); and Sara Zampierin (Doc No. 86, ¶ 2 (noting Plaintiffs' counsel sent information to State about delays for two CHOICES and three MSP applicants).

preliminary injunction. By reverse-engineering that report, we can calculate a number of individuals who received relief through the delay appeal process; these people necessarily had an underlying TennCare application that was delayed because delay is a precondition to relief. In February 2017, the last month for which data is available, there were at least 380 such individuals. From December 2016 to February 2017, there was an average of 371.[6]

## ARGUMENT

**I.      The Class Continues to Satisfy Numerosity.**

      **A.      The phrase "opportunity for a 'fair hearing'" must be understood to include all components of a fair hearing process, such that one has not been fully "given an opportunity for a 'fair hearing'" until that process is complete.**

The proper reading of "given an opportunity for a 'fair hearing'" is to be given all the related process that accompanies a fair hearing, including a final administrative ruling. A person has not been "given" an opportunity for a fair hearing until that process is complete. As a result, the class is inherently transitory: new persons enter the class when a decision on their application is delayed, and they exit the class when they *either* (1) get a decision on the underlying application, such that they are no longer delayed, or (2) get a fair hearing and ruling.[7] This reading of the definition comports with the transitory rationale that justified

---

[6] *See* Michael Warner, 2d Supp. Expert Report 2–3 (April 20, 2017) (attached to Brooke Decl. as Ex. 2); *see also* Supp. Expert Report (Feb. 16, 2017) (attached to Brooke Decl. as Ex. 3); Expert Report (Feb. 13, 2017) (attached to Brooke Decl. as Ex. 4).

As described in the attached expert report, these calculations were made by looking at the final decision given the person (enrolling them, denying them because they were ineligible, or denying them for failing to respond to a request for additional information) and assuming that since TennCare would only fully process a delay appeal if it related to an underlying delayed TennCare application, that these delay appeals related to delayed applications.

[7] For example, if a person applied for TennCare on day 1, did not get a decision on day 45, requested a delay appeal on day 55, and received a decision on the application on day 75, Plaintiffs submit this person entered the class on day 46 and exited the class on day 75. Alternatively, if that person never received a decision on the application then she should get a

3

certification in the first place. *See Wilson v. Gordon*, 822 F.3d 934, 947 (6th Cir. 2016) (noting claim duration is tenuous as "*[t]he State could quickly either hold a hearing on their delayed applications for Medicaid or enroll them in TennCare at any point after the 45- or 90-day deadline expired*, as actually occurred in this case, before the district court could reasonably be expected to rule on the class certification motion." (emphasis added)). It is also consistent with how the phrase "opportunity for a fair hearing" is used in the Medicaid Act and due process jurisprudence generally, which presumably the Court intended.

The Medicaid Act uses this phrase when it provides: "A State plan for medical assistance must – (3) provide for granting an opportunity for a fair hearing before the State agency . . . ." 42 U.S.C. § 1396a(a). It further defines "opportunity for a fair hearing" through regulations. *See* 42 C.F.R. § 431.200, *et seq.* These regulations recognize that the opportunity for a fair hearing involves more than simply having "access to a State administrative appeal system." *See* State Br. 5 (Doc. No. 165). This right includes all the due process standards articulated in *Goldberg v. Kelly*, 397 U.S. 254 (1970); meaningful written notice; the ability to examination of evidence; the presentation of evidence and the confrontation of witnesses; an impartial decision maker; and a reasoned decision based on evidence adduced at the hearing. 42 C.F.R. §§ 431.205(d), .240(a), .242(a)–(e), and .244(a). These regulatory provisions represent subparts of the right to an opportunity for a fair hearing. *Fishman v. Daines*, 164 F. Supp. 3d 409, 414–15 (E.D.N.Y. 2016) ("[A] regulation that 'merely further defines or fleshes out the content of the right to an opportunity to Medicaid fair hearings,' 'may reasonably be understood to be part of the content of the right to an opportunity for Medicaid fair hearings.'" (quoting *Shakhnes v. Berlin*, 689 F.3d 244, 254–56

---

hearing on day 100 (45 days after requesting a hearing); in this scenario, she entered the class on day 46 and exited on day 100—when the hearing was held and a ruling was given.

4

(2d Cir. 2012)); *cf. Harris v. Olszewski*, 442 F.3d 456, 464–65 (6th Cir. 2006) (finding regulation defined rights in Medicaid Act).

This reading is also consistent with how that phrase "opportunity for a fair hearing" is used in related due process contexts, which interpret the phrase to mean an actual hearing with concomitant procedural protections. *Armstrong v. Manzo*, 380 U.S. 545 (1965) is instructive. In *Armstrong*, a parent lost custodial rights and was afforded a hearing only after the decree was entered and the petitioner filed a motion to set aside, which meant the burden of proof shifted to petitioner. *Id.* at 547-9, 551. The lower courts in effect reasoned that this presented an "opportunity" to have a hearing, but the Court rejected this logic, reasoning that an "opportunity to be heard" incorporates related procedural protections. *Id.* at 551–52; *see also id.* at 552 ("'[T]he opportunity to be heard' . . . is an opportunity which must be granted at a meaningful time and in a meaningful manner." (citation omitted)).

The same must be true here. An opportunity for a fair hearing requires that all the elements that make up this right be given, including, ultimately, a fair hearing and ruling. Thus, when the Court conditions class membership on a person having not yet been "given the opportunity for a 'fair hearing,'" a person remains within the class until that process is completed (*i.e.*, when an administrative ruling is entered),[8] because prior to that time an "opportunity for a fair hearing" has not been fully realized by the class member.[9]

**B.     The State's reading of "opportunity for a 'fair hearing'" to simply require access to an appeal system is misplaced and creates absurd results.**

Defendants' argument that "access to a State administrative appeal system" means

---

[8] Or until a determination on the underlying application, since it is then no longer delayed.

[9] Moreover, even if "opportunity for a 'fair hearing'" was satisfied by mere access to an appeal system, that access is not granted without notice, which is not being provided. *See Armstrong*, 380 U.S. at 550; *see also* Pls. Opp. Br. 12 n.5 (Doc. No. 171).

5

every Medicaid applicant has been "given the opportunity for a fair hearing" is inferior to Plaintiffs' reading, both because it conflicts with how that phrase is understood in the Medicaid and due process context, and for the following additional reasons.

**First**, access to an appeal system means only that a person has an opportunity to *request* a hearing, it does not mean an actual opportunity *for* a hearing. This is more akin to giving applicants an "opportunity to appeal" than affording an "opportunity for a fair hearing." By analogy, the Medicaid Act provides that the state plan must "provide for *granting* an opportunity for a fair hearing before the State agency." 42 U.S.C. § 1396a(a)(3). As used in the statute, the word "granting" is what compels *access* to an appeal system, whereas, the phrase "opportunity for a fair hearing" compels numerous other things, including an actual fair hearing and a reasoned decision. *See supra* pp. 4–5. This must be so, because if "opportunity for a fair hearing" is satisfied by granting access to an appeal system then the words "for granting" in the statute would be superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (courts must construe statutes so no word is superfluous).

**Second**, this reading creates an improperly subjective definition. William B. Rubenstein, Newberg on Class Actions § 3.3 (5th ed. 2013, updated 2016). Plaintiffs assume that under the State's reading, the class was void of membership after the Preliminary Injunction Order was entered, since it compelled a process for a fair hearing and thus created an "opportunity." Yet at oral argument the State appeared to say that the "opportunity for a fair hearing" was conferred at some later unspecified time when the State believed its hearing system was effectively operational. This begs the question, when, precisely, did this occur, and what, precisely, constitutes an effective system? It is no answer to say "it is effective *now*"—the problem is that this definition would be ambiguous and subjective, which is unacceptable. *Id.* Given competing plausible readings, the Court has to accept the one which

6

results in a class definition that is lawful.

**Third,** the State's reading creates several anomalous results. To start, at least two sets of appellants failed to get a fair hearing as required by the preliminary injunction order because they were lost in the TennCare delay appeal process.[10] The State would suggest these persons were never class members because they had access to an appeal system, even though that system failed them. If that were true, these individuals would have had no recourse to enforce the preliminary injunction order that was violated by them not receiving a hearing.

Even more strange, the State's reading means that the Court first certified the class to avoid mootness, *see* Prelim. Inj. Order 7–8, and then mooted that very class by entering the preliminary injunction order.[11] The Court would have stripped itself of jurisdiction to enforce the very order it entered to create a remedy, since a case with no plaintiffs is moot.

One must assume the Court foresaw the reasonable consequences of its actions. *See* Newberg on Class Actions § 7:34 (noting decertification only warranted "after some change, *unforeseen at the time of the class certification*, that makes alteration . . . necessary"). One must also attempt to read the Class Certification Order in a manner that does not create absurd results. *Cf. Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 586 n.16 (1982) ("[T]o construe statutes so as to avoid results glaringly absurd, has long been a judicial function."). Given these considerations, the State's reading cannot be accepted, as it requires assuming the Court intentionally deprived itself of jurisdiction and left helpless the victims it stated it was

---

[10] *See* Pls.' Opp. Br. 4 (Doc. No. 171) (noting 1,183 appeals found to be lost in early 2015 and 13 additional appeals found to be lost in August 2015).

[11] Again, the State appears to argue that the class was not empty immediately after the Preliminary Injunction Order was entered, but rather at some later unspecified time. Assuming *arguendo* this could be true, it still means the Court set in motion the future destruction of the class it just created, for the Court surely did not anticipate that the State would refuse to comply with the Preliminary Injunction Order, and that Order required delayed applicants be given access to hearings within 45 days.

7

trying to help. *See* Prelim. Inj. Order at 8.

Finally, even if one were to assume that the Court hoped that at some point Plaintiffs' claims would become moot because the State would finally be back in full compliance with the Medicaid Act's timing requirements (a date we continue to wait for), the standard for evaluating mootness is *not* whether the State is complying with a preliminary injunction order, but rather whether it has voluntarily ceased the wrongful conduct *and* established that it is "'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 712 (6th Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). One does not "voluntarily" cease an illegal activity where compliance is coerced through a preliminary injunction order, and as articulated in Plaintiff's brief, the State has not met this substantial test. Moreover, the State's counsel noted at oral argument that its motion is *not* premised on voluntary cessation.

### C. If the Court finds technical deficiencies with the current definition, it must try to—and can—modify the definition.

Assuming *arguendo* technical defects result in the class having no members—notwithstanding the continued presence of delayed applicants who are benefitting from the preliminary injunction—the remedy is to modify, not decertify. *See* Newberg on Class Actions § 7:37 (decertification a "drastic step"); *Chisolm v. Tran South Fin. Corp.*, 194 F.R.D. 538, 554 (E.D. Va. 2000) ("Prior to decertification, the Court must consider all options available to render the case manageable," including modification.); *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 2097346, at *2 (D. Kan. May 15, 2013) ("[I]t is an extreme step to dismiss a suit simply by decertifying a class, where a 'potentially proper class' exists and can easily be created." (quoting *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984))).

8

Modification may be as simple as striking "the opportunity for" from the definition.[12]

The State has objected to any broadening of the definition, but broadening is permissible and other courts have done so when necessary. *See, e.g.*, *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 288 F.R.D. 290, 296 (S.D.NY. 2013) (modifying empty class due to unintended consequence of wording); *Minter v. Wells Fargo Bank, N.A.*, 280 F.R.D. 244, 245 (D. Md. 2012) (expanding class to match larger statute of limitations); *Gates v. City of Chicago*, No. 04 C 2155, 2011 WL 1811187, at *3, 5-11 (N.D. Ill. May 12, 2011) (certifying supplemental class to address additional claims not covered by original class).

## II. Typicality Remains Satisfied.

Typicality requires representative and class interests be aligned so that "[a]s goes the claim of the named plaintiff, so go the claims of the class." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quotation omitted); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Typicality "tend[s] to merge" with commonality as both address whether absent class members' interests will be protected. *In re Whirlpool Corp.*, 722 F.3d 838, 853 (6th Cir. 2013) (quoting *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349 n.5 (2011)). Yet, "[t]ypicality does not require identical facts," *Staley v. Wilson Cty.*, No. 3:04-1127, 2006 WL 2401083, at *8 n.2 (M.D. Tenn. Aug. 18, 2006), and the test is not "demanding," *Winnett v. Caterpillar, Inc.*, No. 3:06-CV-00235, 2007 WL 2044098, at *7 (M.D. Tenn. July 12, 2007). *See also* Newberg on Class Actions § 23:4. Moreover, "[i]n government benefit class actions, the typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as class members." Newberg on Class Actions § 23:4.

---

[12] The resulting definition would read: "All individuals who have applied for Medicaid (TennCare) on or after October 1, 2013, who have not received a final eligibility determination in 45 days (or in the case of disability applicants, 90 days), and who have not been given a "fair hearing" by the State Defendants after these time periods have run."

9

The State argues typicality is lost because there are changes with how TennCare communicates with the federal government. This argument is reminiscent of one made and rejected previously—that this case is only about those who were directed to the Federal Exchange for a MAGI determination. *See, e.g.*, State Opp. to Class Cert. Br. 18 (Doc. No. 50). The Court disagreed, finding the case has always been about the effects of TennCare's failed implementation of the ACA on *all* TennCare applicants. *See supra* p. 2; *Wilson*, 822 F.3d at 955 (class includes those not directed to Exchange). Moreover, the Court already found no "legal or factual barrier" preventing the State from obtaining necessary information from the Exchange. Prelim. Inj. Order 7. Thus, while there likely are distinctions between TennCare's operation in 2014 and 2017, they are not material differences.

It is helpful to consider the common questions in this case,[13] which remain valid today. Indeed, the "minim[al]" question highlighted by the Court—whether an opportunity for a fair hearing exists—is *still* common. No doubt the State will defend that a system is now in place, but that question of mootness and voluntary cessation is still common to the class.

Put differently, Plaintiffs' claims under 42 U.S.C. § 1396a(a)(8), (a)(3) and the Due Process Clause contain no reference to communications with the Federal Exchange. Nor does the preliminary injunction order. And so long as the order continues to provide class-wide relief, *see supra* pp. 2–3, the claims remain typical. *Stout*, 228 F.3d at 717.

---

[13] These include (1) whether Defendants have in place an effective process to ensure that class members' applications are adjudicated with reasonable promptness; (2) whether Defendants have in place an effective process for class members to receive a fair hearing after their claim is not acted upon with reasonable promptness; (3) whether Defendants' failure to adjudicate the class members' applications within 45 or 90 days violates federal law; (4) whether Defendants' failure to have in place an effective process for class members to receive a fair hearing after their claims are not acted upon with reasonable promptness violates federal law; and (5) whether injunctive and declaratory relief are appropriate and, if so, the terms of any such relief. *See* Class Cert. Order 3–4.

DATED this May 11, 2017.                    Respectfully submitted,

                                            /s/ Samuel Brooke
                                            Samuel Brooke
                                            *On Behalf of Counsel for Plaintiffs*

                                            Michele Johnson TN BPR 16756
                                            Gordon Bonnyman, Jr. TN BPR 2419
                                            Christopher E. Coleman  TN BPR 24950
                                            TENNESSEE JUSTICE CENTER
                                            211 Seventh Avenue North, Ste. 100
                                            Nashville, Tennessee 37219
                                            Telephone: (615) 255-0331
                                            Fax:  (615) 255-0354
                                            mjohnson@tnjustice.org
                                            gbonnyman@tnjustice.org
                                            ccoleman@tnjustice.org

                                            Sara Zampierin*
                                            Samuel Brooke*
                                            Micah West*
                                            Emily Early*
                                            SOUTHERN POVERTY LAW CENTER
                                            400 Washington Avenue
                                            Montgomery, Alabama  36104
                                            Telephone:  (334) 956-8200
                                            Fax:  (334) 956-8481
                                            sara.zampierin@splcenter.org
                                            samuel.brooke@splcenter.org
                                            micah.west@splcenter.org
                                            emily.early@splcenter.org

                                            Jane Perkins*
                                            Elizabeth Edwards*
                                            NATIONAL HEALTH LAW PROGRAM
                                            101 E. Weaver St., Suite G-7
                                            Carrboro, NC  27510
                                            Telephone: (919) 968-6308
                                            Fax: (919) 968-8855
                                            perkins@healthlaw.org
                                            edwards@healthlaw.org

                                            **Attorneys for Plaintiffs**

                                            *\* Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true and correct copy of the foregoing has been filed with the Court through the CM/ECF filing system, and that by virtue of this filing notice will be sent electronically to all counsel of record, including:

Michael W. Kirk
Nicole J. Moss
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036

Linda A. Ross
Carolyn E. Reed
Matthew A. Schultz
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202

Dated May 11, 2017.                                     /s/ Samuel Brooke