# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| MELISSA WILSON, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:14-CV-01492 |
| v. | Judge Collier<br>Magistrate Judge Newbern |
| WENDY LONG, et al., | |
| Defendants. | |

## PLAINTIFFS' RESPONSE

## TO DEFENDANTS' POST-HEARING BRIEF (DOC NO. 211)

Pursuant to the Court's April 28, 2017 Order (Doc. No. 210), Plaintiffs submit this Response in Opposition to Defendants' Supplemental Brief in Support of Their Motion to Decertify the Class and Dismiss the Case (Doc. No. 211).

As argued in Plaintiffs' Post-Hearing Brief (Doc. No. 214), the Class continues to satisfy numerosity because the definition properly created an inherently transitory class that continues to exist, gaining members as TennCare fails to ensure applications are timely processed within the required 45 or 90 days, and losing members as they either receive a decision on their delayed application or complete the hearing process. Typicality is also satisfied since the interests of the class and named plaintiffs remain aligned. Assuming these arguments prevail, the remaining issues raised by the State are inapposite.

Plaintiffs limit this response to the following points. First, assuming *arguendo* the State's reading of the Class Certification Order is correct and there are presently no class members, the relevant inquiry is whether a new class can be formulated that satisfies numerosity; the focus is not on the percentage of applications that are delayed. Second, the continued failure to consistently provide reasonably prompt determinations is actionable under 42 U.S.C. § 1396a(a)(8); any partial relief provided through fair hearings does not obviate the right to a full remedy for this injury. Third, the State's new evidence is not sufficient to carry its heavy burden to justify mootness.

1. **The Relevant Inquiry is Whether Numerosity is Satisfied, not the Percentage of Applicants who are Delayed.**

Assuming *arguendo* the class presently has no members under the State's reading of the phrase "opportunity for a fair hearing," *but see* Pls.' Post-Hearing Br. 3–8 (Doc. No. 214), the duty of the Court is to determine whether there is any potentially proper class that can permit this action to continue as a class suit. *In re Urethane Antitrust Litig.*, No. 04-1616-

1

JWL, 2013 WL 2097346, at *2 (D. Kan. May 15, 2013) ("[I]t is an extreme step to dismiss a suit simply by decertifying a class, where a 'potentially proper class' exists and can easily be created.") (quoting *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)); *see* Pls.' Opp. Br. 6 (Doc. No. 171); Post-Hearing Br. 8. Such a class continues to exist. The Parties do not dispute that, in every month for which data is available since the Preliminary Injunction went into effect, at least 300 people have received relief because their application was delayed, and that the monthly average from May 2015 to February 2017 is more than 675 individuals. *See* Ex. C to Michael Warner's Second Supp. to Expert Rep.(Doc. No. 214-1 at PageID# 3046); 2017 Hagan Decl. ¶ 9 (Doc. No. 213). This is sufficient to establish numerosity. *See City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 529 (M.D. Tenn. 2010) (presumption when class exceeds 40); *Phillips v. Philip Morris Co. Inc.*, 298 F.R.D. 355, 362 (N.D. Ohio 2014) (same).

The State's focus on the *percentage* of delayed cases, *see* State Supp. Br. 4 (Doc. No. 211), is inapposite and reminiscent of its argument in 2014 that since the "vast majority" of applicants were unaffected, no relief was warranted.[1] This Court rejected that argument then, and should do so again now. To reiterate, the question for (de)certification is the practicability of joinder of those whose rights are affected, not the number of persons who are *not* experiencing delays.

To the extent TennCare's failure rate is relevant at all, it goes to whether there remains an appropriate remedy for the ongoing violations of 42 U.S.C. § 1396a(a)(8), not whether numerosity is satisfied. As discussed below, a remedy does still exist and should be available to Plaintiffs—specifically, to compel the State to investigate the basis for these continued

---

[1] *See, e.g.*, State Opp. to Prelim. Inj. 4, 13-14, 43 (Doc No. 51-1).

delays and to take corrective action.

The State implies these ongoing violations are a result of mere happenstance, even as its Medicaid application system remains dysfunctional and dependent on a mitigation plan[2] that permits the State to direct certain applicants to the Federal Exchange. *See* Pls.' Post-Hearing Br. 2. In response to delays at the Federal Exchange, the State has adopted interim measures to resolve applications that they learn are "pended"[3] at the Exchange within 45 days of the State's learning of the discrepancy. *See* 2017 Hagan Decl. ¶ 5. Such measures fail to fully redress the ongoing problems for two reasons. First, this interim measure is incomplete. The Medicaid Act requires a single State agency such as TennCare to process applications within 45 days *from the date of application* (or 90 if based on disability). 42 U.S.C. § 1396a(a)(8); 42 C.F.R. § 435.912(c)(3). But the State is attempting only to adjudicate pended applications within 45 days from the date *the State receives that application from the Federal Exchange*, and without any consideration of the actual date of application. *See* 2017 Hagan Decl. ¶ 5.

In addition, the State cannot articulate why these delays continue. The State does not dispute that at least 300 people receive relief under the preliminary injunction every month, 2017 Hagan Decl. ¶ 9 (Doc. No. 213), but it has "no idea" why these delays continue to occur. Hagan Depo. Tr. 149:22-25 (attached to Brooke Decl. as Exhibit A).

At a minimum, Plaintiffs and the Class are entitled to further relief to compel the State

---

[2] Mitigation plans are intended to be a short-term measure to minimize injuries caused by a State's ongoing statutory violations. The State's mitigation plans are discussed at footnote 3 and the accompanying text of Plaintiffs' Post-Hearing Brief.

[3] "Pended" applications refers to those which cannot be resolved at the Federal Exchange, usually because of a data inconsistency such as income or citizenship status. *See* 2017 Hagan Decl. ¶ 5.

to come up with a corrective plan that first tries to further identify the source of the problem, and then specifies a remedy. Only after doing this — after actually investigating *why* at least several hundred people per month are continuing to suffer delays in their applications being processed — would it be possible to determine that this injury cannot be remedied.

**2.      The Continued Violation of Section 1396a(a)(8) is Justiciable even if Fair Hearings Are Being Provided.**

The State suggests that, because it is providing a remedy through the delay hearing process, its continued failure to provide prompt determinations, as required by 42 U.S.C. § 1396a(a)(8), requires no further relief. *See* State Supp. Br. 4. This is incorrect. This Court has provided partial relief to those suffering (a)(8) violations by compelling the State to provide them with an opportunity for a fair hearing, but those post-delay hearings do not fully remedy the underlying systematic delays that are injuring applicants in the first place. It is an incomplete remedy that mitigates the harm already being suffered, but is no answer to the fact that a delay is happening in the first place.

A similar situation was considered in *Unan v. Lyon*, 853 F.3d 279 (6th Cir. 2017). Plaintiffs challenged the state's failure to promptly provide them with comprehensive Medicaid coverage under § 1396a(a)(8) and (10), and also challenged the state's failure to provide sufficient notice and an opportunity to be heard under § 1396a(a)(3) and the due process clause. *Unan*, 853 F.3d at 284. The Sixth Circuit found that the claims under (a)(3) and the due process clause were resolved by the state's provision of notice and an opportunity to be heard and that judgment was to be entered in Defendants' favor. *Id.* at 291–92. It also ruled that the claims under (a)(8) and (a)(10) involved factual disputes such that summary judgment was not warranted, and remanded for further consideration of those claims. *Id.* at 290–91. The *Unan* court did *not* dismiss the (a)(8) claim simply because a fair hearing was

4

available; it instead correctly interpreted the (a)(8) claim to be independent of the (a)(3) and due process claims.[4] *Accord Doe v. Kidd*, 501 F.3d 348, 356–57 (4th Cir. 2007) (allowing claims under (a)(8) to proceed despite the availability of administrative hearings under (a)(3)).

Similarly, Plaintiffs in this case should be permitted to litigate their claim of a failure by TennCare to process applications in a timely manner under (a)(8) irrespective of the Court's conclusion regarding Plaintiffs' (a)(3) and due process claims. The Court recognized when it certified the class and issued its preliminary injunction order that violations of (a)(8) were occurring and that Defendants were responsible for those delays. Prelim. Inj. Order 2, 5–6 (Doc. No. 91). Though it ordered only relief necessary to "eliminate the backlog" of delayed applications at that preliminary stage of the case, *id.* at 8, it also recognized that Plaintiffs were suffering harm once their application was delayed. The class thus should be read to include applicants who enter the class when a decision on their application is delayed, and who exit when they *either* (1) get a decision on the underlying application, such that they are no longer delayed, or (2) get a fair hearing and ruling.

### 3. The State Cannot Meet its Burden to Show that Violations Will Not Recur.

As discussed in detail in Plaintiffs' Opposition and Post-Hearing Briefs, any argument that the state's alleged reforms obviate the need for further judicial intervention is properly analyzed under a mootness analysis, which the State argues explicitly is not the basis for its Motion. State Supp. Br. 5. Any claims of mootness fail because the State has not met its burden to prove voluntary cessation. Pls.' Opp. Br. 7–11; Pls.' Post-Hearing Br. 8.

The State argues that it is owed "greater solicitude" when it claims it will not repeat

---

[4] Appellees in *Unan* have sought *en banc* review of the panel's decision. At present, no action on that request has been taken by the Court of Appeals.

the errors of its past.  State Supp. Br. 5.  That is true as a general matter, but "such solicitude does not carry much of an official's burden of demonstrating that 'there is no reasonable expectation . . . that the alleged violation will recur.'"  *A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 713 (6th Cir. 2016) (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)).  For example, the fact that TennCare promulgated regulations is not dispositive of this issue because those regulations can be undone within months.  *See* Tenn. Code Ann. § 4-5-201 *et seq.*; *see also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("[T]he city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated.").  The regulations are also silent as to the time period in which a hearing must be held, whereas the Preliminary Injunction Order compels hearings in 45 days; this greater protection, intended to partially ameliorate the ongoing (a)(8) injuries, will be lost if the injunction ends.

Moreover, the State continues to take the position that it did nothing wrong in 2014 when it denied hearings to all persons who were suffering from delayed applications.  Dr. Long now confesses that hearings are required, but includes a caveat: she maintains that the State "is legally required to provide applicants experiencing a delay with an opportunity to appeal *when the State has the application information available to adjudicate such an appeal* . . . ."  2017 Long Decl. ¶ 3 (emphasis added).  This has been a critical issue of dispute throughout this litigation, with the State claiming that it has no responsibility for applications filed at the Federal Exchange because, *inter alia*, it lacks sufficient information to adjudicate an appeal.[5]  This Court and the Sixth Circuit, as well as the U.S. Government, repeatedly responded that TennCare, as the single State agency in charge of its Medicaid program, is

---

[5] *See, e.g.*, State Opp. to Prelim. Inj. 32-33 (Doc No. 51-1).

obligated to provide fair hearings *no matter* the circumstances giving rise to the delay. Prelim. Inj. Order 5–6, 7 (Doc. No. 91); *Wilson v. Gordon*, 822 F.3d 934, 953–54, 955–56 (6th Cir. 2016); Brief for United States as Amicus Curiae Supporting Appellees, *Wilson v. Gordon* (No. 14-6191) at 9–13.

Finally, though Dr. Long now avers that the delay application process will continue if the preliminary injunction were lifted, she fails to provide any meaningful explanation of why this will be so such that the Court should credit these assertions as more than mere litigation posturing. She notes that substantial effort has been put into ensuring compliance with the preliminary injunction, but these are sunk costs which cannot be recouped. Such sunk costs typically have no bearing on future decision-making. More generally, this begs the question of why dismissal is warranted now if the State recognizes the process it created pursuant to the Preliminary Injunction Order continues to serve a useful purpose and will continue unabated.

None of these explanations, either individually or collectively, overcome the State's "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *A. Philip Randolph Inst.*, 838 F.3d at 712 (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

\* \* \*

For the foregoing reasons, as well as the reasons given in previous briefing, Plaintiffs submit that the class remains valid, or in the alternative that it may be modified so as to permit this class action to continue, and that typicality remains satisfied. Plaintiffs respectfully submit that Defendants' Motion should be denied.

7

DATED this May 25, 2017.                     Respectfully submitted,

                                              /s/ Samuel Brooke
                                             Samuel Brooke
                                             *On Behalf of Counsel for Plaintiffs*

                                             Michele Johnson TN BPR 16756
                                             Gordon Bonnyman, Jr. TN BPR 2419
                                             Christopher E. Coleman  TN BPR 24950
                                             TENNESSEE JUSTICE CENTER
                                             211 Seventh Avenue North, Ste. 100
                                             Nashville, Tennessee 37219
                                             Telephone: (615) 255-0331
                                             Fax:  (615) 255-0354
                                             mjohnson@tnjustice.org
                                             gbonnyman@tnjustice.org
                                             ccoleman@tnjustice.org

                                             Sara Zampierin*
                                             Samuel Brooke*
                                             Micah West*
                                             Emily Early*
                                             SOUTHERN POVERTY LAW CENTER
                                             400 Washington Avenue
                                             Montgomery, Alabama  36104
                                             Telephone:  (334) 956-8200
                                             Fax:  (334) 956-8481
                                             sara.zampierin@splcenter.org
                                             samuel.brooke@splcenter.org
                                             micah.west@splcenter.org
                                             emily.early@splcenter.org

                                             Jane Perkins*
                                             Elizabeth Edwards*
                                             NATIONAL HEALTH LAW PROGRAM
                                             101 E. Weaver St., Suite G-7
                                             Carrboro, NC  27510
                                             Telephone: (919) 968-6308
                                             Fax: (919) 968-8855
                                             perkins@healthlaw.org
                                             edwards@healthlaw.org

                                             **Attorneys for Plaintiffs**

                                             *\* Admitted Pro Hac Vice*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true and correct copy of the foregoing has been filed

with the Court through the CM/ECF filing system, and that by virtue of this filing notice will

be sent electronically to all counsel of record, including:

Michael W. Kirk
Nicole J. Moss
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, D.C. 20036

Linda A. Ross
Carolyn E. Reed
Matthew A. Schultz
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202

Dated May 25, 2017.                                    /s/ Samuel Brooke
                                                       Samuel Brooke