IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MELISSA WILSON, et al., | ) | |
| individually and on behalf of all | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:14-cv-01492 |
| | ) | |
| v. | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE |
| WENDY LONG, et al., | ) | NEWBERN |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Attorneys' Fees and Costs. (Doc. No. 272). Through the Motion, Plaintiffs request $372,725 in attorneys' fees and costs on the grounds that they are the prevailing party on the motion for preliminary injunction. Defendant filed a response in opposition to the Motion (Doc. No. 276) and a Notice of Supplemental Authority (Doc. No. 283). Plaintiffs replied. (Doc. Nos. 282, 284).

For the reasons stated below, Plaintiffs' Motion for Attorneys' Fees and Costs is **GRANTED in part**.

### I.  BACKGROUND

On July 23, 2014, Plaintiffs filed the instant suit for themselves and on behalf of unnamed Tennesseans who applied for Medicaid coverage in Tennessee ("TennCare") and did not receive timely eligibility determinations. Plaintiffs alleged Defendants (the "State") was failing to provide timely determinations of TennCare eligibility, in violation of 12 U.S.C. § 1396a(a)(8) (Count I); and failing to provide any sort of fair hearing on the delayed adjudications in violation of 42 U.S.C. § 1396(a)(a)(3) and the Due Process Clause (Counts II and III).

1

At the time the Complaint was filed, the named Plaintiffs had applications for TennCare benefits that had been pending for five to nine months without an eligibility determination. When they asked about a hearing, Plaintiffs were told "they do not do those hearings" and "there was no way [to] appeal without a determination of [their] eligibility." (*See* Doc. No. 91 at 2). The Court held a hearing on Plaintiffs' motion to certify class and for a preliminary injunction on August 29, 2014. Before the hearing occurred, the named Plaintiffs were enrolled in TennCare.

On September 2, 2014, The Court certified the following class as requested by Plaintiffs[1]:

> All individuals who have applied for Medicaid (TennCare) on or after October 1, 2013, who have not received a final eligibility determination in 45 days (on in the case of disability applicants, 90 days), and who have not been given the opportunity for a "fair hearing" by the State Defendants after these time periods have run.

(Doc. No. 90). The Court also entered a preliminary injunction ordering Defendants to provide hearing to those individuals whose applications were delayed (Doc. No 91). The Court found "it is clear that irreparable harm has occurred and will continue to occur without the issuance of injunctive relief." The preliminary injunction ordered:

> The Defendants are enjoined from continuing to refuse to provide "fair hearings" on delayed adjudications, as required by 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 435.912(c)(3). More specifically, based on these provisions, and the Fourteenth Amendment Due Process Clause, the Defendants are ordered to provide the Plaintiff Class with an opportunity for a fair hearing on any delayed adjudication. Any fair hearing shall be held within 45 days after the Class Member requests a hearing and provides the Defendants with proof that an application for medical assistance was filed (or the hearing shall be held within 90 days after that date, if the application was based on disability).

---

[1] The Court's certification was a more concise wording of Plaintiffs' request. Plaintiffs had requested certification of the following class: "[A]ll individuals who have applied for TennCare on or after October 1, 2013, who have not received a final eligibility determination in a timely manner, and who have contacted the Tennessee Health Connection or its successor entity for assistance with that application." (*See* Doc. No. 90).

(Doc. No. 91). The preliminary injunction did not, however, grant Plaintiffs' requested relief as to all claims. In the Motion for Preliminary Injunction (Doc. No. 4), Plaintiffs also requested injunctive relief as to Count I – requiring the State to adjudicate the Medicaid applications with "reasonable promptness," pursuant to 42 U.S.C. § 1396(a)(8).

Shortly after the Court issued the preliminary injunction, the State enacted legislation codifying an appeals system that met the requirements of the preliminary injunction. *See* TENN. COMP. R. & REGS. 1200-13-19 *et seq*. (emergency rule filed Nov. 7, 2014). On August 10, 2016, the Court of Appeals for the Sixth Circuit affirmed the preliminary injunction ruling. (Doc. No. 159); *see Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016) (affirming the district court ruling on the preliminary injunction).

At trial on October 9 and 10, 2018, the parties stipulated that the State has complied with the preliminary injunction since August 2015. (Doc. No. 244 at 6). Plaintiffs stipulated the delay appeal process, codified in TennCare Rules at 1200-13-19 *et seq.*, was available to class members upon request when their applications for Medicaid were not acted upon with reasonable promptness. (Findings of Fact and Conclusions of Law, Doc. No. 269 at 9). The evidence presented at trial showed that, since August 2015, every delayed application processing appeal for which there was proof of a delayed application had been closed for one of the following reasons: 1) the appellant failed to provide the requested information necessary to process his/her application; 2) an eligibility determination was made and a hearing was no longer necessary; or 3) a fair hearing on the reason for the delay was provided within 45 days. (*Id*.). Although delays were once widespread, during 2017, the last year for which data was available at the time of the trial, fewer than 1% of applicants filed a delayed application appeal. (*Id*. at 10). Of those for which a

3

delayed application appeal was filed, 100% were resolved either through a determination of eligibility or a hearing within the 45 or 90-day appeal period. (*Id*. at 17 n.3).

At the conclusion of the trial, the Court denied Plaintiffs' request for a permanent injunction. The problems with the TennCare application process that existed at the commencement of the lawsuit had been corrected so that, at the time of the trial, Defendants were in substantial compliance with the law and Plaintiffs were unable to show a continuing violation of the law or any "existing or imminent invasion" of their rights.

This ruling was based on the changed landscape of the Medicare application process. The Court stated:

> Throughout the course of this lawsuit, Plaintiffs have consistently requested (1) a declaration that Defendants are violating Section 1396a(a)(3), and (2) an injunction that requires Defendants to provide TennCare applicants with an opportunity for a fair hearing to contest delays in determining their eligibility for TennCare. The stipulated facts and evidence at trial establish Plaintiffs have received what they requested. Specifically, the parties stipulated that a delayed application appeals process is both codified in the TennCare regulations, TENN. COMP. R. & REGS. 1200-13-19 *et seq.*, and available to all class members.
>
> Defendants demonstrated at trial that they have no intention of abandoning this process in the absence of judicial supervision. Plaintiffs offer no evidence to the contrary. The Sixth Circuit presumes good faith on the part of government officials when a change in conduct is made, and "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012); *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 n.15 (10th Cir. 2010) (citing similar cases applying the same presumption).
> …
>
> Though it may not be a perfect system, Defendants have implemented and codified the process Plaintiffs sought through this lawsuit: fair hearings required under Section 1396a(a)(3) for TennCare applicants whose applications are not processed within 45 or 90 days. Thus, Plaintiffs are unable to establish at least one of the requirements for the extraordinary remedy of a permanent injunction: that they will suffer irreparable harm absent permanent injunctive relief. *Winter v. Natural Resources Def. Council*,

4

> 555 U.S. 7, 20, 32 (2008). To the contrary, the evidence at trial established Defendants have provided TennCare applicants with an opportunity for a fair hearing to contest delays in determining their eligibility for TennCare, and have codified that process at TENN. COMP. R. & REGS. 1200-13-19 *et seq.*. Accordingly, there is no further injunctive relief for this Court to grant on Plaintiffs' Section 1396a(a)(3) claim. Because any original violations of Section 1396a(a)(3) were remedied by this Court's preliminary injunction and Defendants' subsequent enactment of TENN. COMP. R. & REGS. 1200-13-19 *et seq.*, Plaintiffs fail to show there is any "existing or imminent invasion" of their rights so that they are entitled to declaratory relief. *Angell v. Schram*, 109 F.2d 380, 381 (6th Cir. 1940).

(Findings of Fact and Conclusions of Law, Doc. No. 269 at 14–15).

Plaintiffs claim to be the "prevailing party" with regard to the preliminary injunction and filed the instant motions seeking attorneys' fees and costs related to filing the lawsuit and preliminary injunction. (Doc. No. 272). Defendants argue that Plaintiffs are not prevailing parties, but if the Court determines Plaintiffs have "partially prevailed" and are entitled to some fee, the fees should be substantially reduced.

## II. ANALYSIS

Under the "American Rule," parties typically pay their own attorneys' fees. Congress created an exception to the American Rule that allows the prevailing party in a civil rights suit to recover attorneys' fees and costs. *See* 42 U.S.C. § 1988(b) ("the court, in its discretion, may allowing the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs); *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019).

**A. Prevailing Party**

Generally, the prevailing party is one who receives a final judgment in his or her favor. In providing for fees under § 1988, "Congress intended to permit … the award of counsel fees only when a party has prevailed on the merits." *Binta B. ex rel S.A. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013) (quoting *Hanrahan v. Hampton*, 446 U.S. 753, 758 (1980)). To be considered a

5

prevailing party for purposes of an award of attorneys' fees, a party need not prevail on every claim.  "Over time, 'prevailing on the merits' has been distilled to succeeding on any significant issue which achieves some of the benefit the parties sought in bringing the suit, the settling of some dispute which affects the behavior of the defendant toward the plaintiff, and resolution of the dispute in a way that … alters the legal relationship of the parties." *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

A recipient of a preliminary injunction who ultimately loses on the merits is not entitled to attorneys' fees. *Sole v. Wyner*, 551 U.S. 74, 78 (2007) ("[A] plaintiff who achieves a transient victory at the threshold of an action can gain no award under [§ 1988's] fee shifting provision if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded.").  The decision in *Sole* left open the question of whether, in a case in which there was no final decision on the merits, "success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." *Id*. at 78.

**1. Plaintiffs' Claims Remedied By The Preliminary Injunction Were Moot**

Defendants argue that, as in *Sole*, Plaintiffs' claims were decided "on the merits" at trial and, therefore, counsel fees are not available.  Plaintiffs argue that *Sole* is distinguishable and that the Court's final disposition of the claims in this case more analogous to claims, such as those raised in *Miller v. Caudill*, 936 F.3d 442 (2019), that have become moot than to claims decided "on the merits."

In *Sole*, the plaintiff challenged a state law banning nudity in parks. *Id*. at 78-79.  The plaintiff wanted to create antiwar art in the form of a peace sign composed of nude bodies on a public beach on Valentines' Day. *Id*.  Two days before the anticipated production, the plaintiff filed an emergency motion for preliminary injunction to prevent the defendants from interfering.

6

*Id*. The court issued a preliminary injunction and the plaintiff created the peace symbol display on the beach. *Id*. at 80. Thereafter, the plaintiff continued her challenge to the law banning nudity in state parks and pursued a permanent injunction – she intended another nude production the following year. *Id*. at 80. The district court, upon consideration of a "fuller record," rejected the plaintiff's challenge to the nudity law. *Id*. at 80-81, 85. The court determined that the prohibition of nudity was "no greater than essential … to protect the experiences of the visiting public," dissolved the preliminary injunction, and entered judgment in favor of defendant. *Id*. at 80-81, 85. On these facts, the Supreme Court held that the plaintiff was not the prevailing party because the district court rendered a "final decision on the merits" and "rejected the same claim she advanced in her preliminary injunction motion: that the state law banning nudity in parks was unconstitutional." *Id*. at 86.

In contrast to the decision "on the merits" in *Sole*, in *Miller*, the Sixth Circuit vacated a preliminary injunction and held that the claims were rendered moot. 936 F.3d at 447. In *Miller*, a county clerk, in the wake of the Supreme Court's decision recognizing same-sex marriage in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), stopped issuing marriage licenses and instructed her deputy clerks to do so also. *Id.* at 446. Plaintiffs were four couples who unsuccessfully sought marriage licenses during this time. *Id*. The *Miller* court issued a preliminary injunction enjoining the clerk from "enforcing her policy" — essentially ordering her to issue marriage licenses. *Id*. The clerk refused to comply with the preliminary injunction, choosing jail time instead. *Id*. While she was in jail, her deputy clerks issued marriage licenses to six of the eight plaintiffs (two others decided not to wed); four of those six used the licenses to wed. *Id*. While the case was pending, the Kentucky General Assembly amended Kentucky law so that county clerks were not required to sign marriage licenses, and in response to this change in law, the defendant agreed to issue

7

marriage licenses (or not interfere with her deputies doing so) and asked the Sixth Circuit to dismiss her pending appeals. *Id*. at 447. The Sixth Circuit dismissed the appeals and instructed the district court to vacate the preliminary injunction. *Id*. On review of a motion for attorneys' fees, the Sixth Circuit considered that the plaintiffs' claims had been mooted by the ensuing legislation and the clerk's decision to issue marriage licenses. *Id*. at 448.

The circumstances in this case are more closely analogous to *Miller* than to *Sole*. As to the claims which were the subject of the preliminary injunction (Counts II and III), the Court found that the enacted legislation codifying the Court's preliminary injunction mooted the claims and in light of Defendants' demonstration at trial that they have no intention of abandoning this process in the absence of judicial supervision, "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." (Findings of Fact and Conclusions of Law, Doc. No. 269 at 14 (citing *Bench Billboard Co.*, 675 F.3d at 981)). On these grounds, the Court vacated the preliminary injunction which required hearings on delayed adjudications and denied Plaintiff's request for a permanent injunction. (*Id*. at 19). Unlike in *Sole*, where plaintiff's constitutional challenge failed on the merits, here, as in *Miller*, Defendants demonstrated a willingness to comply with existing law. In both cases it was a refusal to comply with the law that the plaintiffs sought to enjoin. In *Miller* – the refusal to issue marriage licenses. Here – the refusal to hold delayed adjudication hearings. In both cases, once the defendants exhibited a willingness to comply with the law and did in fact comply, the claims were effectively moot. In contrast, in *Sole*, the defendant was temporarily enjoined from enforcing a law, but once the injunction was vacated, it presumably resumed enforcement.

### 2. Case Specific Inquiry

Having found that that Plaintiffs' claims that were the subjected of the preliminary injunction were not decided on the merits, but were rendered moot, the Court applies a "case specific inquiry" to determine whether Plaintiffs were the "prevailing party." *See Miller*, 936 F.3d at 448. In *Miller*, the court held that in cases where a claim becomes moot and a preliminary "injunction was all plaintiffs got," courts must perform a "case specific inquiry," focusing on whether there was "court-ordered, material, enduring change in the legal relationship between the parties," to determine if the recipient of the preliminary injunction is the "prevailing party." to determine if the recipient of the preliminary injunction is a prevailing party. *Id*. The *Miller* court summarized the requirements as follows: "First, for the change to have been *court ordered*, the preliminary injunction must have cause it; it can't stem from [defendants'] voluntary modification of [] conduct. Second, for the change to have been *material*, it must have directly benefited plaintiffs by altering how [defendants] treated them. And third, for the change to have been *enduring*, it must have been irrevocable, meaning it must have provided plaintiffs with everything they asked for." *Id*. (emphasis in original).

In *Miller*, the court found the plaintiffs, who successfully obtained a preliminary injunction prohibiting defendant from "enforcing her policy" of refusing to issue marriage licenses, were the prevailing parties. *Id*. at 449. The *Miller* court reasoned that the change was court-ordered — the defendant issued the marriage licenses only after the court ordered her to do so; the plaintiffs obtained a material benefit — marriage licenses.; and the change was enduring — once the plaintiffs secured marriage licenses, the defendant no longer had control over whether they "tied the knot." *Id*. "In short, the injunction gave plaintiffs all the court-ordered relief they needed, and the issuance of marriage licenses mooted their request for them." *Id*. The court noted that the

Kentucky legislature's alteration of the marriage license form, which ultimately convinced the defendant to abandon her policy, did not negate the court-ordered change that resulted in the plaintiffs being granted marriage licenses. *Id*. ("The relief plaintiffs obtained – the unobstructed opportunity to secure pre-alteration marriage licenses – therefore stemmed from the preliminary injunction, not from the legislature's or [defendant's] later voluntary actions.)

Here, the state was not providing delay adjudication hearings until ordered to do so by the Court. Thus, the change was court-ordered. Second, the change was material — TennCare applicants who, prior to the entry of the preliminary injunction, "had no recourse" or ability "to appeal a delayed eligibility determination" were provided a delay appeal hearing. Finally, the change was enduring as to all applicants who received a hearing. Defendants' argument that the hearing was not an enduring change because it did not require a decision on the delayed application, misses the point. The hearing itself provides the relief requested on Plaintiffs' due process claim and is enduring in that the hearing cannot be "undone."

Defendants also argue that it is apparent Plaintiffs did not get "all of the relief they requested" through the preliminary injunction because they later requested additional procedural requirements following the trial. (Def. Resp., Doc. No. 276-1 at 9). The fact that Plaintiffs identified ways to improve the appeal process in the four-years Defendants were complying with the preliminary injunction and hearing appeals, does not negate Plaintiffs' success on the motion for preliminary injunction. When Plaintiffs sought a preliminary injunction requiring defendants to, among other things, provide delayed application appeals, Defendants were not providing an opportunity for appeals *at all*. The preliminary injunction required them to do so. The other requests for preliminary relief were remedial as to Count I (requiring a determination of eligibility with reasonable promptness). Plaintiffs brought two claims and successfully obtained a

preliminary injunction as to one of those claims. This is sufficient basis on which to find Plaintiffs are the "prevailing party" and eligible for a discretionary award of attorneys' fees. *See McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010) ("A plaintiff crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought.") (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989).

For these case-specific reasons, the Court finds that the Plaintiffs prevailed on their claims related to the delay appeal hearing for purposes of 42 U.S.C. § 1998 and that the Plaintiffs are entitled to their reasonable attorneys' fees and expenses reasonably attributable to these claims.

**B. Reasonable Attorneys' Fees**

A prevailing party seeking attorneys' fees pursuant to 42 U.S.C. § 1988 has two main obligations: "(1) provide the court with 'evidence supporting the hours worked and rates claimed and (2) to demonstrate that the requested fee is 'reasonable.'" *Occupy Nashville v. Haslam*, No. 3:11-cv-01037, 2015 WL 4727097 (M.D. Tenn. Aug. 10, 2015) (citing *Building Service Local 47 v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995). "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

Here, Plaintiffs have provided attorney declarations with itemized time records and task descriptions. (*See* Doc. No. 272). This is sufficient evidentiary support for the fee request. The remaining question is whether, in light of all of the circumstances of this case, the fee award sought is reasonable. "The starting point for determining the reasonableness of a requested fee is the

'lodestar' analysis, whereby the requested fee is compared with the amount generated by multiplying the number of hours reasonably worked on the litigation by the reasonably hourly rate." *Occupy Nashville*, 2015 WL 4727097, at * 9 (citing *U.S. Structures v. J.P. Structures*, 130 F.3d 1185, 1193 (6th Cir. 1997)). A reasonable hourly rate is determined by considering the skill, experience, and reputation of the attorneys involved and the market in which they practice. *Id*. (citing *Adcock-Ladd*, 227 F.3d at 350). If the requested fee is essentially in line with the "lodestar," then there is a strong presumption that the requested fee is reasonable and recoverable. *Id*.

In addition to the lodestar analysis, the court also considers any relevant "*Johnson*" factors and whether some adjustment to the award is required under those factors. *See Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999) (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)). These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* The Sixth Circuit has recognized that, often, these factors are naturally blended into the reasonableness analysis. *Paschal v. Flagstar Bank,* 297 F.3d 431, 435 (6th Cir. 2002).

The "extent of a plaintiff's success is a crucial factor in determining a proper award of attorney's fees." *Hensley*, 461 U.S. at 440. Especially, "where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id*. at 434. If a "plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent

on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id*. at 440. But, if the "lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id*. When determining how to reduce an unreasonable request for attorneys' fees, "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award." *Hensley*, 461 U.S. at 436-37.

Plaintiffs have requested attorneys' fees for legal work performed by attorneys for three non-profit organizations that served as co-counsel in this case: the Tennessee Justice Center (TJC), the National Health Law Program (NHeLP), and the Southern Poverty Law Center (SPLC). Plaintiffs state that although many attorneys and non-attorneys from each organization contributed to the litigation, they have limited the fee request to two attorneys per organization: Samuel Brooke and Sara Zampierin for the SPLC, Gordon Bonnyman, Jr. and Christopher Coleman, for the TJC, and Jane Perkins and Elizabeth Edwards for the NHeLP. In recognition of their limited victory in this case, these attorney submitted detailed time records showing only time spent related to: (1) filing the complaint; (2) securing the preliminary injunction and class certification orders; (3) defending those orders from Defendants' first motion to dismiss; and (4) defending those orders from Defendants' second motion to decertify and dismiss. In addition, they voluntarily reduced time spend on travel by 50%, and reduced hours across-the-board by 10% to account for the multiple organizations working on the case. The total attorneys' fees requested is $372,725.[2] Plaintiffs also seek an award of expenses under 42 U.S.C. § 1988 in the amount of $2,630.92

---

[2] This is the amount requested after Plaintiffs reduced the hourly rate requested for Mr. Coleman from $400 to $350 per hour. (Doc. No. 282 at 9 n. 1).

incurred by the Southern Poverty Law Center, related to the filing fee, transcript of the hearing on the request for a preliminary injunction and class certification, and travel.

1. **Reasonable Rates**

The rates sought for counsel range from $250 to $600 and corelate to the experience of each attorney. Attorneys Robert J. Walker, David K. Taylor, and Charles W. Bone have filed affidavits attesting to the reasonableness of the rates sought by these attorneys and the rates requested are commensurate with those requested by attorneys of similar experience and expertise. (See Doc. Nos. 272-8, 272-9, and 272-10). The two most experienced attorneys are Jane Perkins, Legal Director of the National Health Law Program, who has over 35 years of experience, and Gordon Bonnyman Jr., who has over forty-five years of experience, have requested $500 per hour and $600 per hour, respectively.

Defendants do not object to the rates requested by attorneys for the Southern Poverty Law Center or the National Health Law Program. They do, however, object to the hourly rate requested for work by the attorneys for the Tennessee Justice Center – Mr. Bonnyman ($600) and Mr. Coleman ($350).[3] Defendants' objections appear to be based entirely on lower hourly rates claimed by Mr. Coleman and Mr. Bonnyman in a previous case. These objections are unfounded. First, the Court notes that Defendants do not object to the $500 per hour rate claimed by Ms. Perkins, who has ten years less experience than Mr. Bonnyman. The declarations submitted show that the additional ten years of experience is accompanying by a billing rate increase of $150 to $200 per hour. (*See* Doc. Nos. 272-8, 272-9, and 272-10). Moreover, Mr. Bonnyman has practiced law for over 45 years and has specific expertise in the area of Medicaid litigation — he has testified on Medicaid law and policy before congressional and state legislative committees, has written

---

[3] Plaintiffs reduced the hourly rate requested for Mr. Coleman from $400 to $350 per hour to reflect the 12 percent increase in prevailing rates since 2014. (Doc. No. 282 at 9).

extensively on Medicaid law and health policy, and has received numerous awards for his work. Mr. Bonnyman's legal experience combined with his expertise in health care law and policy, specifically TennCare, and his reputation for excellent legal work, justifies his requested hourly fee of $600 per hour.

Mr. Coleman's requested rate of $350 per hour is justified for an attorney with over ten years of experience and specialized expertise litigating federal lawsuits involving challenges to the TennCare program. In addition, both Mr. Walker and Mr. Taylor stated that the Tennessee Justice Center has a reputation for excellent legal work and that its attorneys would command fees at the upper end of rates charged by Nashville area attorneys with equivalent experience. (Walker Decl., Doc. No. 272-10, ¶ 5; Taylor Decl., Doc. No. 292-9, ¶ 6). Accordingly, based on the declarations submitted and the experience of counsel in this case, the Court finds that the hourly rates requested by Plaintiffs' counsel are reasonable and reflect the prevailing market rate in the community.

Defendants also complain that Mr. Bonnyman's hours represent an unreasonable percentage of the total hours and that he has spent too much time doing "low-level work" and work unrelated to the relief Plaintiff's obtained. On these grounds, Defendants request that the Court reduce Mr. Bonnyman's compensated hours by sixty percent. The Court has reviewed Mr. Bonnyman's time record and, with one exception detailed below, finds his hours to be reasonable and related to the litigation. Moreover, the Court notes that Mr. Bonnyman has only requested fees for slightly more than a third of the time spent on this case and, like all of the attorneys, has reduced his time by an additional ten percent to account for the fact that two other law firms were involved.

### 2. Non-Compensable Time

Defendants also complain that the fees requested for the following specific work is excessive or non-compensable: prefiling discussions with the State; post-complaint advocacy work; and work on the motion to dismiss and motion to decertify class.

First, Defendants argue that the number of hours spent preparing the complaint (113.4) is excessive and that Plaintiffs cannot recover attorneys' fees for time spent on non-litigation discussions with the State. The Court disagrees. Time spent preparing the complaint is compensable and on pre-filing discussions with the State is compensable. Section 1988 authorizes fees "only for time reasonably expended *on the litigation* – in other words, time spent *in this case*." *Binta B. ex rel S.A. v. Gordon*, 710 F.3d 608, 630 (6th Cir. 2013) (emphasis in original). Compensable prefiling work includes "[i]nvestigation, preliminary legal research, drafting of demand letters, and working on the initial complaint." *Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 571 U.S. 177, 189 (2014). Pre-litigation work on a case, including the drafting of demand letters is compensable because it is "useful and of a type ordinarily necessary to advance the … litigation." *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers and Participating Employers*, 571 U.S. 177, 189 (2014) (holding that investigation, preliminary legal research, and drafting demand letters are "standard preliminary steps toward litigation"). Although Plaintiffs spent a considerable amount of time preparing the case, given the complexity and parties involved, the time spent was not unreasonable. The Court has reviewed the pre-litigation communications with the State (Doc. Nos. 276-7, 276-8) and finds it represents work reasonably related to the claim upon which Plaintiffs were ultimately successful.

Second, Defendants argue that Plaintiffs are not entitled to fees for "post complaint advocacy work" to obtain "interim relief" for certain class members. Defendants assert that 74.6 hours related to this "interim relief" is unrelated to the litigation and non-compensable. Plaintiffs disagree, arguing that lists of class members was directly related to the litigation and that their stories were presented to the Court in support of the motion for preliminary injunction. The Court agrees that reviewing class members is related to the litigation; however, specific vetting related to interim relief is not. Having reviewed the time entries at issue, the Court will reduce the time requested in this area as follows: Sara Zampierin (9.5 hours); Gordon Bonnyman Jr. (19 hours); Chris Coleman (19 hours).

Revised hours calculations based on these reductions are as follows:

| Attorney | 2014 | | 2016-17 | | Total |
| --- | --- | --- | --- | --- | --- |
| | Hours Claimed | Rate | Hours Claimed | Rate | |
| Samuel Brooke | 143.9 | $300 | 19.6 | $325 | $49,540 |
| Sara Zampierin | (111.3 - 9.5) 101.8 | $250 | 16.8 | $300 | $30,490 |
| Gordon Bonnyman | (340.4 - 19) 321.4 | $600 | 3.0 | $600 | $194,640 |
| Chris Coleman | (72.9-19) 53.9 | $350 | 1.6 | $350 | $19,425 |
| Jane Perkins | 52.0 | $500 | 0.3 | $500 | $26,150 |
| Elizabeth Edwards | 102.3 | $300 | 4.2 | $325 | $32,055 |
| **TOTAL** | | | | | **$352,300** |

Finally, Defendants argue that Plaintiffs cannot recover fees for work on the motions to dismiss and motion to decertify class because they were unrelated to the successful motion for preliminary injunction and success on a motion to dismiss or motion to decertify class does not justify an award of attorneys' fees. While these motions do not constitute "success on the merits" that would independently justify an award of attorney's fees, the argument that Plaintiffs are not entitled to fees for *any* work performed after the issuance of the preliminary injunction is

17

untenable. Plaintiffs are entitled to fees related to defending the preliminary injunction before this Court for the practical reason that if the motion to dismiss the relevant claims had been granted, the preliminary injunction would have been vacated. Moreover, in the Court's Memorandum and Order on the Motion to Decertify the Class and Dismiss the Case, the Court found that some Medicaid applications continued to be delayed and "Defendants have not provided evidence that that individuals with delayed applications are immediately provided with a fair hearing or a final eligibility determination." (Doc. No. 232 at 4-5). It was not until after a trial that the Court concluded the issue of delayed application appeals was moot. Accordingly, Plaintiffs post-injunction litigation related to this issue is compensable.[4] *See Miller*, 936 F.3d at 452-53 (when legal claims are related by a common core of facts, a prevailing plaintiff may recover fees for legal services related to successful and unsuccessful claims).

### 3. Fee-Adjustment

After determining the lodestar amount, the Court can adjust the fee upward or downward "to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd*, 227 F.3d at 349. However, "a 'strong presumption' favors the prevailing lawyer's entitlement to his lodestar fee." *Id*. at 350. Thus, "modifications to the lodestar are proper only in certain 'rare' and 'exceptional' circumstances supported by both 'specific evidence' on the record and detailed findings." *Id*. (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986)).

---

[4] Not only are the motions to dismiss related to the claim on which Plaintiffs were the prevailing party, the 45.5 hours claimed for opposing two motions to dismiss is extraordinarily low, especially considering that the second motion to dismiss involved a hearing and pre- and post-hearing briefing. The Court declines to reduce the compensable hours related to the motions to dismiss and motion to decertify class.

Defendants argue that the attorneys seek recovery for all time spent drafting the complaint and litigating the preliminary injunction even though they were ultimately successful only on claims related to the delayed adjudication appeal. Defendants argue that "[b]ecause the preliminary injunction granted the Plaintiffs less than half the relief they requested, the Court should **reduce the total hours incurred by each attorney by 50 percent**." (Def. Resp., Doc. No. 276-1 at 14) (emphasis in original).

As Plaintiffs have taken it upon themselves to request significantly less that the full amount expended on this litigation, the Court will not further reduce the award of attorneys' fees.[5] The amount requested is reasonable in light of the success obtained and the complexity and duration of the litigation. This case was heavily litigated over a period of four years. During that time, the landscape of the Medicare application system in Tennessee changed so that when the case was tried in October 2018, many of the systemic problems which existed at the outset had been resolved. Part of the resolution was mandated by the preliminary injunction. While the preliminary injunction was in place over 40,000 applicants were able to appeal a delay in the processing of their Medicaid application, whereas before the preliminary injunction there was no such process in place. In sum, as to this claim, Plaintiffs obtained "excellent" results. *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.") Although Plaintiffs were not successful on every claim, in large part due to improvements made during the course of this litigation, this partial success is reflected in Plaintiffs' proactive reduction in the billable hours submitted for reimbursement. For these reasons, except as provided above, the Court finds that further reduction in attorneys' fees is not warranted.

---

[5] Mr. Bonnyman states that he has logged 969.1 hours on this case. If the full amount of his time were billed, the total for his time alone would be $581,460.

## III. CONCLUSION

Accordingly, Plaintiffs Motion for Attorneys' Fees and Costs is **GRANTED** as follows: Plaintiffs are awarded $352,300 in attorneys' fees; and $2,630.92 in costs. Costs in the amount of $2,630.92 shall be paid to the Southern Poverty Law Center. Attorneys fees shall be paid to the Tennessee Justice Center in the amount of $214,065, the Southern Poverty Law Center in the amount of $80,030, and the National Health Law Program in the amount of $58,205.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE